Wilde J.
delivered the opinion of the Court. We have not been able to discover any thing unsound in the principles as laid down by the chief justice of the Court of Common Pleas, in his instructions to the jury, upon the facts reported. Nothing is better settled than the general principle, that innkeepers are chargeable for the goods of their guests lost or stolen from their inns. This liability is imposed upon them from considerations of public policy, for the security of travellers, and to *288 protect them not only against the negligence, but also against dishonest practices of the innkeeper or his servants. And from long experience it has been found to be a salutary principle of public policy. It may undoubtedly, in some cases, subject the innkeeper to losses, without any negligence or fault on his part. This may seem hard and unjust, but hard cases are not always to be avoided, and a wholesome rigor is sometimes necessary, to insure public security. It is however no more hard for an innkeeper than for his guest, to sustain a loss, neither party being in fault ; especially when the former undertakes a trade with a full knowledge of his liabilities, for he may so regulate his charges as to indemnify himself. Innkeepers, as well as common carriers, are regarded as insurers of the property committed to their care, and are bound to make restitution for any injury or loss not caused by the act of God, or the common enemy, or the neglect or fault of the owner of the property.[1]
It is not denied that this is the law of England, but it is said that here the same motives of policy do not exist, the innkeepers here being generally trust-worthy and men of integrity. If this were true without any exception, it would by no means show that the same favorable state of things would continue under a more lax system of policy. Let a door be opened to fraudulent and dishonest practices, and we may expect to see them soon creep in and prevail. To prevent new evils from springing up, is no less important than to suppress those which already prevail. The law therefore rests on the same principles of policy here as it does in England and other countries, and it is wise and reasonable. Innkeepers have peculiar privileges and great facilities to abuse their trust, if they are so disposed, and therefore it is that some peculiar liabilities are imposed upon them in order to prevent, as far as possible, any such abuse.
And this action may be well maintained in the name of the plaintiffs, although they were not themselves the guests of the defendant and did not deliver the horse and harness to him to be kept ; it is sufficient that the horse and harness were their *289 property and were delivered by their servant. Beedle v. Morris, Cro. Jac. 224 ; Bac. Abr. Inns, &c. C 5 ; Jones on Bailments, 95. So it is no objection that the defendant was to receive no separate reward for the safe keeping of the harness, for the pay for keeping the horse included a compensation for taking care of the' chaise and harness.[2]
Then it was urged, that neither the plaintiffs nor their servant were tho defendant’s guests, as neither of them had diet or lodging at his inn. But it is clearly settled that to constitute a guest, in legal contemplation, it is not essential that he should be a lodger or have any refreshment at the inn. If he leaves his horse there, the innkeeper is chargeable on account of the benefit he is to receive for the keeping of the horse.[1] Lord Holt held a different opinion, in the case of York v. Grenaugh, 2 Ld. Raym. 866 ; but the opinion of the majority of the court has ever since been considered as well settled law.
It was objected that the defendant kept a livery stable as wel. as an inn ; but the evidence was satisfactory that the property was delivered as to an innkeeper, and the jury were warranted in so finding.

Judgment of C. C. P. affirmed

 See Jones v. Tyler, 3 Nev. & Man. 576; S. C. 1 Adolph. & Ellis, 522; 2 Kent’s Comm. (3d ed.) 592, and note (d); Story’s Comm. Bailments, (2d ed.) 313.

 See Story’s Comm. Bailments, (2d ed.) 311, 312; Orange County Bank v. Brown, 9 Wendell, 114, 115.